UNITED STATES DISTRICT COURT          ELECTRONIC PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
MOSES WALKER,                              :
                                           :
                          Plaintiff,       :
                                           :       MEMORANDUM
                                           :       AND ORDER
               - against -                 :
                                           :       08-CV-4861 (JG) (LB)
RICHARD F. DAINES, M.D., COMMISSIONER,     :
WENDY E. SAUNDERS, CHIEF OF STAFF,         :
THE NEW YORK STATE DEPARTMENT OF           :
HEALTH; AND CHRC LEGAL REVIEW UNIT,        :
                                           :
                          Defendants.      :
--------------------------------------------------------------- X
A P P E A R A N C E S:

        MOSES WALKER
                472 Canterbury Street
                Westbury, NY 11590
                Plaintiff, *pro se*

        ANDREW M. CUOMO
                Attorney General of the State of New York
                120 Broadway - 24th Floor
                New York, NY 10271
        By:     Kathryn E. Leone
                Attorney for Defendants

JOHN GLEESON, United States District Judge:

        Moses Walker brings this action pursuant to 42 U.S.C. §§ 1983, 1985 and 1988,

alleging constitutional due process and equal protection violations and a First Amendment

retaliation claim.  Walker also alleges a claim for conspiracy under § 1983[1] and violations of

New York state law.  This action arises out of the New York State Department of Health's

("DOH" or the "Department") denial of his employment eligibility application to a nursing home

---

[1]        Walker originally brought his conspiracy claim pursuant to 42 U.S.C. § 1985.  However, in his
opposition papers Walker noted that he intended to bring a § 1983 conspiracy claim.  He requested leave to amend
the pleadings, which I grant herein.

pursuant to N.Y. Exec. Law § 845-b based on his prior convictions of murder and robbery and a lack of demonstrated rehabilitation. Defendant Richard F. Daines is sued in his individual and official capacities for alleged actions taken as DOH Commissioner. Wendy E. Saunders is sued in her individual and official capacities for alleged actions taken as DOH Chief of Staff. Walker is seeking compensatory and punitive damages as well as injunctive relief, a declaratory judgment and attorney's fees.

Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (6) & (7) for lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted and failure to join a party under Rule 19. For the reasons stated below the motion is granted.

BACKGROUND

The following facts are drawn from Walker's amended complaint, filed March 4, 2009, and documents incorporated by reference in that complaint, and are assumed to be true for the purposes of this motion.

A.      *The Relevant Statutory and Regulatory Framework of Criminal History Records Checks*

Under New York law, applicants for employment involving direct patient care in a nursing home are required to submit to criminal background checks, including fingerprinting. N.Y. Pub. Health Law §§ 2899, 2899-a; N.Y. Exec. Law § 845-b. The Criminal History Records Check Legal Review Unit ("CHRC Unit") is the administration unit within the DOH tasked with fulfilling that statutory obligation. N.Y. Pub. Health Law § 2899-a(4).

A nursing home requesting a criminal history records check must fill out a DOH form on which, among other things, an authorized representative certifies in a sworn statement that the person for whom criminal history information is requested is a "subject individual,"

meaning "a person for whom a provider is authorized to request a check of criminal history information" pursuant to Exec. Law § 845-b.  N.Y. Exec. Law § 845-b(3)(b)(i); N.Y. Comp. Codes R. & Regs. tit. 10, §§ 402.3(l), 402.6(b).  Also on this form, the provider certifies that the specific duties of the position the subject individual is applying for qualify the provider to request the criminal history information check.  N.Y. Exec. Law § 845-b(3)(b)(ii).  Together with the DOH form, the prospective employee's personal information and fingerprints are submitted to the Division of Criminal Justice Services ("DCJS") and Federal Bureau of Investigations ("FBI").  N.Y. Exec. Law § 845-b(4); N.Y. Comp. Codes R. & Regs. tit. 10, § 402.6.  While the results of the criminal history records check are pending a provider may temporarily approve a prospective employee.  N.Y. Comp. Codes R. & Regs. tit. 10, § 402.6(d).

After the DCJS and FBI complete the records check, the DOH reviews the criminal history information.  N.Y. Exec. Law § 845-b(5); N.Y. Comp. Codes R. & Regs. tit. 10, § 402.7.  Persons designated by the provider to review criminal history information and any other party to whom such criminal history information is disclosed are required to keep criminal history information strictly confidential and not available for public inspection.  N.Y. Exec. Law § 845-b(7); N.Y. Comp. Codes R. & Regs. tit. 10, § 402.7(d).  If the criminal history information of a prospective employee reveals any class A felony, the DOH is required to deny or disapprove that person's application unless the DOH "determines, in is discretion, that approval of the application or … employment will not in any way jeopardize the health, safety or welfare of the beneficiaries of such services."  N.Y. Exec. Law § 845-b(5)(a); N.Y. Comp. Codes R. & Regs. tit. 10, § 402.7(a)(2).  As part of its discretionary determination and prior to making a final decision, the DOH must afford the prospective employee the opportunity to explain in writing why the application should not be denied.  N.Y. Exec. Law § 845-b(5)(d); N.Y. Comp. Codes R.

& Regs. tit. 10, § 402.7(b). In the meantime, the DOH is required to provide the nursing home

and prospective employee, in writing, with a summary of the criminal history information and

notification of proposed disapproval of eligibility for employment. N.Y. Exec. Law § 845-

b(5)(f). At this stage -- and until receipt of a final determination of eligibility for employment

from the DOH -- the provider is not permitted to allow the prospective employee to provide

direct care or supervision to patients, residents or clients. N.Y. Exec. Law § 845-b(5)(f); N.Y.

Comp. Codes R. & Regs. tit. 10, § 402.7(a)(2)(i).

In making its final determination of employment eligibility of an individual with

one or more criminal convictions, the DOH must consider the factors set forth in N.Y. Corr. Law

§ 753(1).[2] If, after considering these factors, the DOH determines that the employment

application must be denied, it is required to notify the nursing home and to provide it with a

summary of that information. N.Y. Exec. Law § 845-b(5)(g). The prospective employee must

also be notified of the reasons for the denial. N.Y. Exec. Law § 845-b(5)(h). If the DOH

determines that the prospective employee's employment will not in any way jeopardize the

health, safety or welfare of patients, residents or clients of the providers, and therefore neither

issues a disapproval of eligibility of employment nor directs the provider to issue a disapproval,

---

[2] The factors to be considered by a public agency concerning a previous criminal conviction are:
(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
(b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
(d) The time which has elapsed since the occurrence of the criminal offense or offenses.
(e) The age of the person at the time of occurrence of the criminal offense or offenses.
(f) The seriousness of the offense or offenses.
(g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.
(h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.
N.Y. Corr. Law § 753(1).

the provider may act on the application in its own discretion.  N.Y. Comp. Codes R. & Regs. tit. 10, § 402.7(a)(2)(ii).

After conducting a criminal history background check and making its determination, the DOH is required to create and maintain a permanent record for the individual. N.Y. Pub. Health Law § 2899-a(7) ("The department shall create a permanent record, update the information in accordance with section eight hundred forty-five-b of the executive law and make such records available to providers pursuant to this section."); N.Y. Pub. Health Law § 2899(4) ("'Permanent record' shall mean a permanent, written record of a determination and the criminal history information maintained by the department.").  In the event that a prospective employee already has a permanent record on file, that information will be immediately made available to a provider who intends to hire the prospective employee.  N.Y. Pub. Health Law § 2899-a(8).

B.    *Walker's Employment Eligibility Application*

On September 13, 2007, Walker was hired by Bridge View Nursing Home ("Bridge View") as a Staffing Coordinator for an annual salary of $40,000.   By DOH CHRC form 103, dated Sept. 24, 2007, Bridge View submitted Walker's fingerprints and identifying information to the DOH for a criminal history records check pursuant to N.Y. Exec. Law § 845-(3)(b).[3]  The Administrative Assistant for Bridge View, Loreanther Williams, signed the form, certifying that "the subject individual … will provide direct care or supervision to individuals receiving care and/or services and is a subject individual concerning whom a criminal history check is required by law."[4]  Walker's Form 103.

_____

[3]    In response to the Court's request at oral argument, the parties furnished it with a copy of Walker's form 103, which has been docketed (under seal) and made part of the record ("Walker's Form 103").

[4]    At oral argument Walker contended that DOH issued a directive in 2006 stating that every employee hired by a nursing home facility must be subject to a criminal background check.  May 1, 2009 Trans. 30-31.  However, the supplemental materials the parties were invited to submit did not establish that all nursing home employees must undergo a criminal history background check.  In particular, the August 2006 Directive submitted by Walker is a general description of the Criminal History Records Check program, which was first implemented in

5

By Letter of Pending Denial, dated October 24, 2007, the CHRC Unit notified Walker that a review of his criminal history records might disqualify him from employment and that Bridge View had been advised to revoke "any temporary work approval in a position involving direct care or supervision to patients, residents or clients."  Pl. Decl., Ex. B. Referencing his 1979 felony convictions for second degree murder and second degree robbery, based on conduct that occurred when he was 16 years old, the letter advised Walker of the opportunity to explain in writing, within 30 days, why his eligibility for employment should not be denied.  The letter noted that his response should specifically address his rehabilitation and good conduct.  It further indicated that after review of the written submission, the DOH would issue a determination to Bridge View.  Finally, the letter stated that if a response from Walker was not received within 30 days, DOH would advise Bridge View that Walker's eligibility for employment must be denied.

The CHRC Unit also sent a Pending Denial Letter, dated October 24, 2007, to Bridge View, advising it of the Unit's "intent to deny [Walker's] eligibility for employment."  Pl. Decl., Ex. C.  The letter indicated that the DOH was affording Walker the opportunity to explain in writing why his eligibility for employment should not be denied and invited Bridge View to "supplement the support for [Walker's] response."  *Id*.  Finally, the letter noted that "[a]ny temporary approval in a position which involves direct care or supervision to provider's patients, residents or clients must be revoked promptly.  You will be notified by DOH if we decide not to deny eligibility for employment, or you will be sent a Denial Notification."  *Id*.  Walker, who

---

September 2006, and nowhere states what Walker claims.  In any case, on Walker's Form 103, Bridge View employee Loreather Williams certified that Walker was a subject individual who would "provide direct care or supervision to individuals receiving care and/or services" as required by law.  Walker's Form 103.  The CHRC Unit acted in accordance with that certification, which did not contravene the statute or regulations.  Accordingly, Walker's contention at oral argument is without merit.

falsely denied that he had a criminal record when he applied for the position at Bridge View, was then advised by his supervisor to resign from the position, which he did.

In a timely response dated November 16, 2007, and mailed via next-day service on November 19, 2007, Walker addressed why he should be allowed to maintain his employment. His letter noted: (1) he had not had any contact with law enforcement nor been involved in any criminal activity since his release from incarceration in 1993; (2) he had been employed within the health care industry since 1994 at various hospitals and nursing homes; (3) he had received achievement awards and letters of recommendation from directors and supervisors at those facilities, noting his professionalism and compassion for the elderly; and (4) other evidence of rehabilitation, including his having earned his G.E.D. as well as Associates and Bachelor of Science Degrees in Business Administration, completed a two-year Paralegal Studies program, a word processing program and 3200 hours of Optical Technological vocational training, and participated in various therapeutic courses such as the Violent Behavior Awareness and Community Preparation programs. Walker noted that he was granted full discharge from probationary supervision and was released from the Division of Parole's monitoring as a result of his rehabilitation. He requested that in light of his rehabilitation and good conduct he be allowed to continue his employment at Bridge View. *Id*., Ex. D.

In a Letter of Final Denial dated November 26, 2007, the CHRC Unit denied Walker's application for employment at Bridge View. It explained that Executive Law § 845-b(5)(a) required the DOH to deny employment applications of individuals whose criminal history information revealed convictions for certain specified serious crimes unless DOH determined, in its discretion, that the employment would "not in any way jeopardize the health, safety or welfare of the beneficiaries of such services." *Id.*, Ex. E. The letter noted that the reasons for

denying Walker's employment application were (1) the seriousness of his offense and (2) the unreasonable risk to the safety and welfare of the covered provider's patients, residents or clients. It also indicated that the CHRC Unit had not received and therefore had not considered any response from Walker. Declaration of Kathryn E. Leone in Support of Defendants' Motion to Dismiss ("Leone Decl."), Ex. B. at 4. As a result of the final denial determination, Walker phoned the CHRC Unit numerous times to seek assistance.

C.     *The Article 78 Proceeding*

On February 20, 2008, Walker brought an Article 78 proceeding in New York Supreme Court, Queens County, challenging the DOH's decision to deny his application for employment at Bridge View. On July 11, 2008, the court ruled in favor of Walker, vacating the DOH's determination and remitting it for reconsideration. The court found that the CHRC's denial of Walker's employment application was arbitrary, capricious and constituted an abuse of discretion because it was made solely on the basis of Walker's criminal conviction record and lacked an analysis of the requisite statutory factors under N.Y. Corr. Law § 753. Pl. Decl., Ex. I at 8.

On July 25, 2008, Walker moved to modify/expand the state court judgment to include money damages for lost wages and back salary. The state court denied that motion on December 5, 2008 and denied Walker's reargument motion on March 13, 2009. On January 16, 2009, Walker moved for permission to appeal the December 5, 2008 order denying money damages in both the Supreme Court, Queens County and the Appellate Division, Second Department. *See Matter of Walker v. New York State Dep't of Health CHRC Legal Review Unit*, Index No. 2009-00569. Both the Appellate Division and the Supreme Court, Queens County denied Walker's motion.

D.    *The CHRC Unit's Reconsideration of Walker's Application*

In letters dated August 1 & 13, 2008, the CHRC Unit informed Walker that it had reconsidered its decision disapproving his application for employment by Bridge View and concluded that it was ultimately "without jurisdiction" to make a determination with respect to his application because he was not an "employee" as defined by Public Health Law § 2899(3).[5] *Id.*, Ex. J.  The letter explained that the initial denial of his application was based on Bridge View's certification that Walker's position involved direct patient care or supervision of patients or residents.  However, on reconsideration of his application, the DOH reviewed the job description provided by Bridge View and determined that Walker could not be deemed an "employee" because the position for which he was hired did not, in fact, involve direct patient care or supervision to patients or residents.

In letters dated August 11 and 12, 2008, to Daines and Saunders, Walker requested their assistance and attached letters he wrote to the CHRC Unit in which he stated that he considered the DOH's August 1, 2008 letter retaliation against him for bringing the Article 78 proceeding and requested reinstatement.  *Id.*, Ex. O & P.  Walker received no response.

A record of Walker's criminal history check remains in the DOH system.  It accurately indicates that he was convicted of a class A felony.  *Id.*, Ex. M.

E.    *The Instant Action*

On November 11, 2008, Walker filed the complaint in this action pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, claiming that defendants violated his due process and equal

---

[5]      N.Y. Public Health Law § 2899(3) states an "employee" is "any person to be employed or used by a provider … to provide direct care or supervision to patients or residents."  A "prospective employee" is defined as "any individual, not currently an employee, who files an application for employment as an employee with a provider and the provider has a reasonable expectation to hire such individual as an employee."  N.Y. Pub. Health Law § 2899(5).  A "temporary employee" is defined as "any employee who has been temporarily approved for employment pending a determination by the department."  N.Y. Pub. Health Law § 2899(7).

protection rights under the Fourteenth Amendment and retaliated against him in violation of the First Amendment for bringing the Article 78 proceeding. Walker seeks $8 million in compensatory damages, $2 million in punitive damages, and attorney's fees under 42 U.S.C. § 1988. Walker also requests a declaratory judgment that (1) the defendants' actions violated his rights under both the New York and United States Constitutions, and (2) orders defendants to have Walker reinstated to his position as Staffing Coordinator at Bridge View. Finally, Walker requests a permanent injunction requiring, *inter alia*, defendants to remove his name from any and all adverse classification against employment.

Walker's motion for leave to proceed *in forma pauperis* was granted on December 18, 2008. His motion to appoint counsel was denied without prejudice on the same date. Walker moved to amend his complaint on March 4, 2009, which was granted at oral argument on May 1, 2009.

The defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (6) & (7) for lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, and failure to join a party under Rule 19. Defendants also assert that (1) the claims are barred under the Eleventh Amendment, (2) claims against Daines and Saunders in their individual capacities must be dismissed because Walker failed to adequately allege personal involvement based supervisory liability; (3) *Younger* abstention applies because there is an ongoing state court action; and (4) Daines and Saunders would be protected from a damages suit in their individual capacities by qualified immunity. I heard argument on the motion on May 1, 2009.

DISCUSSION

A.      *Standard of Decision – Motion to Dismiss*

10

Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g.*, *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998))). The standards for reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) are the same. *See Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) (setting forth both standards). Accordingly, I must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, 551 U.S. 89, ---, 127 S. Ct. 2197, 2200 (2007) (*per curiam*), and draw all reasonable inferences in favor of the plaintiff. *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal* ("*Iqbal II*"), 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009).

While generally "[s]pecific facts are not necessary" to state a claim so long as the statement gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests,'" *Erickson*, 127 S. Ct. at 2200 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), in at least some circumstances a plaintiff must plead specific facts in order to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. The Second Circuit has interpreted this principle as a "flexible 'plausibility standard'" under which a plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *rev'd on other grounds*, 556 U.S. ---, 129 S. Ct. 1937 (2009) ("*Iqbal I*") (emphasis omitted) (interpreting *Twombly*). The Second Circuit's subsequent decision in *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008),

however, strongly suggests that *Twombly* does not significantly alter the lenient, notice-focused standard used to assess the complaint of a *pro se* litigant. *Id.* at 213-14. *Boykin* noted that after *Twombly*, the Supreme Court's decision in *Erickson* addressed the sufficiency of a *pro se* plaintiff's pleading under Federal Rule of Civil Procedure 8(a). Relying on *Erickson*, the Second Circuit concluded that "departure from Rule 8(a)'s liberal pleading standard was particularly unwarranted" where the complaint was filed *pro se*: "'A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Boykin*, 521 F.3d at 214 (quoting *Erickson*, 127 S. Ct. at 2200).

When considering a motion to dismiss, a court may examine (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as exhibits or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit. *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

B.      *Subject Matter Jurisdiction*

Defendants move to dismiss the claims against them for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). "[S]ubject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (internal quotation marks and citation omitted). The basic statutory grants of federal-court subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "[f]ederal-question" jurisdiction, § 1332 for "[d]iversity of citizenship" jurisdiction. "A plaintiff properly invokes [federal question] jurisdiction when [he] pleads a

colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh*, 546

U.S. at 513. "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the

federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior

decisions of this Court, or otherwise completely devoid of merit as not to involve a federal

controversy." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). Because I

do not find that Walker's complaint is so deficient, I decline to dismiss it for lack of subject

matter jurisdiction.

C.      *The Constitutional Claims*

      1.      *The Eleventh Amendment Bars Claims Against DOH and the CHRC Unit and Official Capacity Claims For Damages Against Daines and Saunders*

          a.      *Damages Claims*

Walker's amended complaint alleges that the defendants violated 42 U.S.C. §

1983 and seeks $10 million in compensatory and punitive damages. Defendants argue that

Walker's claims against the DOH, CHRC Unit, and the claims against Daines and Saunders in

their official capacities, should be dismissed because they are precluded by the Eleventh

Amendment. I agree.

Section 1983 creates a private right of action against "[e]very person who, under

color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes

to be subjected, any citizen … to the deprivation of any rights, privileges, or immunities secured

by the Constitution and laws." 42 U.S.C. § 1983. The Supreme Court has made clear, however,

that the Eleventh Amendment bars § 1983 suits against state governments in federal court. *See*

*Quern v. Jordan*, 440 U.S. 332, 343 (1979) (§ 1983 does not abrogate sovereign immunity of the

states). The Eleventh Amendment bars a suit against a state or one of its agencies in a federal

court unless either Congress has clearly abrogated the states' immunity or the state has

unequivocally waived its immunity. *See Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 29-30 (2d Cir. 1991) (citing *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). "This bar exists whether the relief sought is legal or equitable." *Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990) (quotation marks and citation omitted).

   The DOH and its administrative subunit, the CHRC Unit, may assert Eleventh Amendment immunity since the DOH is an agency of the state, which is the real party in interest. *See id.* at 28 n.1 ("Agencies of the state … are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest."). In addition, because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), damages claims against Daines and Saunders in their official capacity are barred. Accordingly, claims against the DOH and the CHRC Unit as well claims for damages against Daines and Saunders in their official capacities are dismissed.

   b. *Injunctive and Prospective Relief*

   It is well-settled that the Eleventh Amendment does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *see Will*, 491 U.S. at 71 n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotation marks omitted); *Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005) ("[S]tate officials cannot be sued in their official capacities for retrospective relief under Section 1983 ... [but] can be subject to suit in their official capacities

for injunctive or other prospective relief").  Thus, while Walker's § 1983 claims against Daines and Saunders in their official capacities for damages are barred by the Eleventh Amendment, his claims against them for prospective relief -- a change in the classification of him as a "presumptive 'life-time employment disqualification' candidate" and employment reinstatement at Bridge View -- are not.

2.    *Walker's Procedural Due Process Claims*

Walker alleges that he was denied his constitutional right to procedural due process when his employment application was denied by the CHRC Unit and he was terminated from employment.

The Fourteenth Amendment forbids states from depriving any person of property or liberty without due process of law.  *See* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law....").  Procedural due process refers to the minimal requirements of notice and a hearing guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments when the deprivation of a significant life, liberty or property interest may occur.

To prevail on a procedural due process claim, a plaintiff first must identify a property or liberty interest that is entitled to due process protection.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985).  Second, it must show that the State has deprived it of that interest.  Third, a plaintiff must allege facts showing that the deprivation was effected without due process.  *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990) (*per curiam*).

a.    *Property Interest*

The Supreme Court has held that "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a

unilateral expectation of it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "'[He] must, instead, have a legitimate claim of entitlement to it' under state or federal law in order to state a § 1983 claim." *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) (quoting *Roth*, 408 U.S. at 577). "While property interests are constitutionally protected, they are not generally constitutionally established; rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005) (internal quotation marks omitted). Thus, as the Court in *Roth* explained, "the welfare recipients in *Goldberg v. Kelly*, … had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them." *Roth*, 408 U.S. at 577.

Though not explicitly stated, Walker asserts a property interest in his employment at Bridge View. Here, state law determines whether Walker possessed only an unprotected unilateral expectation of employment, or a constitutionally-protected "legitimate claim of entitlement." *Roth*, 408 U.S. at 577. Under New York law, Walker was a "temporary employee" at the time his criminal history background check forms were submitted because he had been temporarily approved for employment but no formal determination on his application had yet been made. *See* N.Y. Pub. Health Law § 2899(3) (defining "employee" as "any person to be employed or used by a provider … to provide direct care or supervision to patients or residents"); N.Y. Pub. Health Law § 2899(7) (defining "temporary employee" as "any employee who has been temporarily approved for employment pending a determination by the department"). It is well-settled that a temporary or at-will employee has no property interest in his employment, and thus may not invoke the protections of the Due Process Clause. *See Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (constitutionally protected property interests are found in situations involving contracts with tenure provisions or clearly implied

promises of continued employment).  Accordingly, because he does not possess a "legitimate claim of entitlement" to his employment at Bridge View, Walker has no cognizable property interest.  In fact, he could not even be said to possess a unilateral expectation of employment.  Walker had not been formally approved to work at Bridge View and by signing the criminal history background check authorization forms, he was put on notice that his employment was contingent on passing the background check.

        b.     *Liberty Interest*

A § 1983 liberty interest claim, commonly referred to as a "stigma plus" claim, *see, e.g.*, *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004), "requires a plaintiff to allege (1) the utterance of a statement about [him] that is injurious to [his] reputation, 'that is capable of being proved false, and that he or she claims is false,' and (2) 'some tangible and material state imposed burden … in addition to the stigmatizing statement.'"  *Velez*, 401 F.3d at 87 (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds*, *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003)); *see also DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (a stigma plus claim involves "injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process" (citing *Paul v. Davis*, 424 U.S. 693, 701-02 (1976))).  The defamatory statement "must be sufficiently public to create or threaten a stigma."  *Velez*, 401 F.3d at 87.  Similarly, because defamation alone is properly viewed as a state tort, *see, e.g.*, *Donato v. Plainview-Old Bethpage Cent. School Dist.*, 96 F.3d 623, 630 (2d Cir. 1996), a statement is cognizable as a constitutional deprivation only by virtue of the "plus," which, imposed by the defendant, must be "a specific and adverse action clearly restricting the plaintiff's liberty," such as the loss of employment or the termination or alteration of some other legal status or right.

*Velez*, 401 F.3d at 87-88. A negative impact on job prospects is insufficient. *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994).

Walker alleges that the defendants' continued classification of him as a "'life-time employment disqualification' candidate" in their records system amounts to a constitutionally cognizable deprivation of liberty. Am. Compl. ¶ 62. He contends that defendants' action places him "in a category as a permanently undesirable candidate for employment purposes and destroys his opportunity for gainful employment within the Healthcare industry." *Id.*

First, and most importantly, Walker's stigma-plus claim fails because the statement he complains of is not false.[6] Under the statute, he is presumptively disqualified from employment absent a discretionary determination to the contrary by the DOH because he was convicted of a class A felony in 1979. N.Y. Exec. Law § 845-b(5)(a) ("[W]here the criminal history information concerning a subject individual reveals a conviction *at any time* of any class A felony… the authorized agency *shall* deny or disapprove the application for … employment of the subject individual … or direct the provider to deny employment, … *unless* the authorized agency determines, in its discretion, that approval of the application … will not in any way jeopardize the health, safety or welfare of the beneficiaries of such services") (emphasis added). Unlike class B, C, D and E felonies, the presumptive bar never expires for class A felonies. *Id*. Because the substance of Walker's criminal history is not contested, the DOH's classification of him pursuant to statute based on that information cannot be proven false.

Second, Walker's stigma-plus claim cannot survive because he has not alleged that the defendants have disseminated or are likely to disseminate the statement. Absent

---

[6] Although the precise language of the complained of classification does not appear in CHRC database record submitted by Walker, *see* Walker Decl., Ex. M, nor in any other document before me, Walker makes clear that he is objecting to the "presumptive lifetime bar" language in the database record. *See* Walker Decl. at 3 (noting that Exhibit M is a CHRC record "designating and classifying the Plaintiff as a 'life-time employment disqualification' candidate").

publication or dissemination, a stigma-plus claim fails.  *See e.g.*, *Loudermill*, 470 U.S. at 547

n.13 (failure to allege publication "doom[ed]" liberty interest claim); *Velez*, 401 F.3d at 87

(defamatory statement "must be sufficiently public to create or threaten a stigma.").  Walker has

not alleged that defendants published its internal record about Walker.  While Walker alleges

that subsequent prospective employers could learn of this classification by gaining access to his

permanent record, they would do so only with his consent -- as part of a criminal history check

for another job.  Thus, to the extent that the DOH maintains permanent records of an individual's

criminal history, such record keeping does not constitute publication since the information is

only released with the prospective employee's consent.  Moreover, to safeguard against privacy

concerns akin to Walker's regarding the sensitivity of criminal history information, the statute

and applicable regulations explicitly require that criminal history information remain

confidential.  N.Y. Exec. Law § 845-b(3) & (7) ("Any criminal history information provided by

the division, and any summary of the criminal history information provided by the authorized

agency to an employer pursuant to this section is confidential and shall not be available for

public inspection.").  Allegations that the confidentiality of the record was breached in any way

are absent from the amended complaint.  In Walker's case, the permanent CHRC record he

complains of does not satisfy the publication requirement of a stigma-plus claim.

      For the above-stated reasons, Walker has failed to allege a cognizable liberty

interest.

      c.    *Adequate Process*

      Assuming, *arguendo*, that Walker had a cognizable property or liberty interest, his

procedural due process claims would nonetheless fail because Walker was afforded all of the

post-deprivation process he was due.

The type of process due depends upon whether the alleged violation was caused by "established state procedures" or by "random, unauthorized acts by state employees." *Hellenic American Neighborhood Action Committee v. City of New York* ("*HANAC*"), 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)). There is no due process violation when a state employee intentionally deprives an individual of property or liberty through a random, unauthorized act "so long as the state provides a meaningful postdeprivation remedy." *HANAC*, 101 F.3d at 880. On the other hand, when the deprivation "occurs in the more structured environment of established state procedures," rather than through random acts of state employees, "the availability of post deprivation procedures, will not, ipso facto, satisfy due process." *Id.* Pragmatic considerations justify this distinction. When a deprivation occurs because of a random, arbitrary act by a state employee,

> [i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under 'color of law,' is in almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation.

*Hudson*, 468 U.S. at 532 (internal quotation marks and citation omitted).

In this case, because the determination to deny Walker's employment application and the subsequent purported classification of Walker as a "'life-time employment disqualification' candidate", were made by the CHRC Unit, his procedural due process claims are based on the allegedly unauthorized acts of state employees. The state provides a post-deprivation remedy for such violations in the form of an Article 78 proceeding. *See HANAC*, 101 F.3d at 880-81 (Article 78 proceeding is an adequate post-deprivation remedy where a due process claim is based on a random, unauthorized act of a state employee). Walker successfully

challenged the denial of his employment application in an Article 78 proceeding in New York state court, where he also could have brought a liberty interest due process claim. *Id.*

In sum, Walker has not alleged a cognizable property or liberty interest, and in any case he was afforded all the process he was due. Accordingly, his procedural due process claims are dismissed.

3. *Walker's Substantive Due Process Claims*

Walker also alleges violations of his substantive due process rights. Am. Compl. ¶¶ 57, 59, 63 & 65. Rights are protected by substantive due process only if they are "fundamental," (*i.e.*, "objectively, deeply rooted in this Nation's history and tradition"). *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal quotation marks omitted). "Substantive due process protects only those interests that are 'implicit in the concept of ordered liberty.'" *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). "[W]here the alleged right … cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental, notions of substantive due process will not apply." *Local 342*, 31 F.3d at 1196 (citing *Reno v. Flores*, 507 U.S. 292, 303 (1993)) (internal quotation marks omitted); *see also Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198 (1979) (collecting cases discussing traditional interests protected by substantive due process, such as procreation, marriage and family life).

Walker does not explicitly state the "fundamental" right his claim concerns. To the extent he is asserting a property or liberty right, his claim fails for the reasons discussed above. In addition, in order to maintain a substantive due process claim, a plaintiff must allege that the deprivation of the liberty or property interest was arbitrary in a constitutional sense.

*Collins v. City of Harker Heights*, 503 U.S. 115, 129-30 (1992). "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) ("Substantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action."); *see also McCormack Sand Co. v. Town of N. Hempstead Solid Waste Mgmt. Auth.*, 960 F. Supp. 589, 595-96 (E.D.N.Y. 1997) ("Substantive due process does not provide protection against state actions which are merely incorrect or ill-advised.") (internal quotations omitted). The CHRC's determination denying Walker's employment eligibility does not rise to the level of "outrageously arbitrary government conduct." For the foregoing reasons, Walker's substantive due process claims are dismissed.

    4.    *Walker's Equal Protection Claims*

Walker alleges that his right to equal protection under the law was violated when the CHRC Unit refused to reinstate his employment at Bridge View after he prevailed in his Article 78 proceeding. He contends that the defendants deprived him of "equal treatment as those who were similarly situated and reinstated to their previous positions of employment, based upon the same or identical issues of complaint." Am. Compl. ¶ 60.

A state and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In essence, the mandate of the Equal Protection Clause is to prohibit the government from treating similarly situated persons differently. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

To state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) compared with others similarly situated, the plaintiff was selectively adversely treated; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith or intent to injure a person. *See Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008); *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005). Alternatively, instead of alleging that the selective treatment was based on an impermissible consideration, a plaintiff may establish that there was no rational basis for the selective treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*). Such a claim is commonly referred to as a "class of one" equal protection claim. *Id*.

Following the Supreme Court's recent decision in *Engquist v. Oregon Dep't of Agric.*, a plaintiff stating a "class of one" equal protection claim must allege: (1) that he was treated differently from others similarly situated in all relevant respects; (2) that defendants had no rational basis for the differential treatment, *see Olech*, 528 U.S. at 564; and (3) that the differential treatment resulted from a non-discretionary state action. *Engquist*, 553 U.S. ---, 128 S. Ct. 2146, 2154 (2008).

Walker brings a class of one claim, alleging that unlike other similarly situated individuals who were reinstated to their prior positions after prevailing in Article 78 proceedings, he was denied reinstatement. He cites to numerous cases in support of his position, but in none of those cases did the court order reinstatement or direct the agency to approve a claimant's employment. Rather, in each case, after ruling in the claimant's favor, the court remanded the case to the administrative agency for reconsideration. *See Black v. New York State Office of Mental Retardation and Developmental Disabilities* ("*OMRDD*"), 20 Misc. 3d 581 (N.Y. Cty,

2008) (in Article 78 proceeding, court found administrative determination revoking temporary work approval based on petitioner's criminal history was arbitrary and capricious and remanded matter for further consideration); *Boatwright v. New York State OMRDD*, No. 0100330/2007, 2007 slip op. 30911(U) (N.Y. Sup. Ct. Apr. 18, 2007) (same); *see also Soto-Lopez v. New York City Civil Service Comm'n*, 713 F. Supp. 677 (S.D.N.Y. 1989) (veteran who should have been hired as housing caretaker with city housing authority was entitled to damages but was not ordered reinstated). Walker's emphasis on *Gallo v. OMRDD*, 37 A.D. 3d 984 (3d Dep't 2007), is also misplaced. The petitioner in *Gallo* brought an Article 78 proceeding seeking annulment of the determination denying his application for employment based on his criminal history. The court found for the petitioner and both annulled the determination and directed the respondent to approve petitioner's employment. On appeal, the Third Department agreed that the determination was arbitrary, however, it reversed the judgment to the extent it directed respondent to approve petitioner's employment, and rather remitted the matter to the respondent for reconsideration. *Gallo v. Office of Mental Retardation and Developmental Disabilities*, 37 A.D. 3d 984 (3d Dep't 2007).

Walker has not been treated differently from similarly situated individuals. In fact, having prevailed in his Article 78 proceeding, he was treated in precisely the same way as other individuals who successfully challenged their employment eligibility determinations; his case was remanded to the agency for reconsideration. Moreover, courts and agencies lack the authority to mandate reinstatement because the decision to employ the prospective employee is ultimately the employer's. Although an agency can deny eligibility, it cannot require that the employer hire a person, even where it finds that the "prospective employee's employment will not in any way jeopardize the health, safety or welfare of patients, residents or clients of the

providers." N.Y. Comp. Codes R. & Regs. tit. 10, § 402.7(a)(2)(ii). Rather, the ultimate decision is within the employer's discretion. Finally, Walker's claim fails in light of the Supreme Court's *Engquist* decision, which held that the "class of one" doctrine does not apply to the public employment setting. *Engquist*, 128 S. Ct. at 2154-57.

Because Walker has not alleged disparate treatment, defendant's motion to dismiss his equal protection claim is granted.

5. *Walker's First Amendment Retaliation Claims*

Walker also alleges a violation of his First Amendment right against retaliation. Specifically, he alleges defendants' refusal to reinstate his employment at Bridge View and "continued adverse classification of [him] as a 'life-time employment disqualification' candidate" demonstrate unlawful retaliation against him for bringing an Article 78 proceeding. Am. Compl. ¶¶ 63-64.

To state a claim for First Amendment retaliation under § 1983, a plaintiff must allege that: "(1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him." *Morris v. Lindau*, 196 F .3d 102, 110 (2d Cir. 1999). The First Amendment protects the rights to complain to public officials and to seek administrative and judicial relief. *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988). Walker successfully brought an Article 78 proceeding, conduct that is clearly protected by the First Amendment. *See Gagliardi v. Village of Pawling*, 18 F.3d 188, 194-95 (2d Cir. 1994) (commencement of Article 78 proceedings is conduct protected by the First Amendment). Although Walker can demonstrate the first element, he has not alleged an adverse employment decision. In the context of a First Amendment retaliation claim, "'[o]nly retaliatory conduct that

would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'" *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004) (internal citation omitted) (alteration in *Washington*)).  The general rule informing "whether an undesirable employment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination." *Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006). However, "[a] plaintiff cannot support such a determination unless he can show that an alleged act of retaliation is more than de minimis." *Zelnick*, 464 F.3d at 225.

      The defendants' failure to reinstate Walker is not an adverse action because defendants did not have the authority to reinstate him.  As discussed above, only Bridge View had the authority to make the hiring decision in the absence of a disapproval of an employment application.  Thus, assuming *arguendo* that CHRC had jurisdiction to issue a recommendation with respect to Walker's position on reconsideration, even if they had determined that Walker did not pose a risk to patients and thus did not disapprove his employment application, it would not have had the authority to order Walker's reinstatement because the ultimate hiring decision rested with Bridge View.  *Cf. Deters v. Lafuente*, 368 F.3d 185, 188-89 (2d Cir. 2003) (dismissing retaliation claim on motion for summary judgment because defendant's failure to discontinue disciplinary proceedings against plaintiff was not retaliatory where defendant had no authority to take such action).

      Nor can Walker's allegation that defendants retaliated against him by continuing to classify him "as a 'life-time employment disqualification' candidate" be considered an adverse action.  As discussed above, the DOH is required to create and maintain a permanent record for an individual after conducting a criminal history background check and making its determination

with respect to that person.  N.Y. Pub. Health Law § 2899-a(7) ("The department shall create a permanent record, update the information in accordance with section eight hundred forty-five-b of the executive law and make such records available to providers pursuant to this section."). Because the action Walker complains of is in fact legally mandated, it cannot be an adverse action.

For the foregoing reasons, Walker's retaliation claims fail as a matter of law.

5.    *Walker's Conspiracy Claims*

Walker alleges that the defendants conspired to deprive him of his constitutional rights to due process and equal protection in violation of 42 U.S.C. § 1985.  In his opposition papers and at oral argument, however, Walker makes clear that he intended to bring his claims pursuant to 42 U.S.C. § 1983.  His request to amend the complaint to reflect the statute under which he intended to bring its civil conspiracy claims is granted.

To survive a motion to dismiss, a § 1983 conspiracy claim must allege: (1) an agreement between two or more state actors or a state actor and a private party, (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.  *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.  *Ciambriello*, 292 F.3d at 325; *Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983").  Moreover, it is well-settled that although "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, … the pleadings must present facts tending to show agreement and concerted action."  *McIntyre v. Longwood Cent. Sch. Dist.*, No. 07-CV-1337,

2008 WL 850263, at *11 (E.D.N.Y. Mar. 27, 2008) (internal quotation marks and citations omitted).

Where a plaintiff, as is the case here, has failed to demonstrate that it suffered any constitutional injury, his § 1983 conspiracy claim must also fail. *Young v. County of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998) ("There was no deprivation of a federal constitutional right, and therefore there can be no civil rights conspiracy to deprive that right."); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("[T]he [conspiracy] lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right."). Accordingly, plaintiff's § 1983 conspiracy claim is dismissed.[7]

D.     *The State Law Claims*

Having dismissed all of Walker's federal claims,[8] I conclude that retaining jurisdiction over the state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, …, the state claims should be dismissed as well."); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir.), *cert. denied*, 476 U.S. 1159 (1986)). Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), I decline to retain jurisdiction over the remaining state law claims and dismiss them without prejudice.

---

[7]     Because Walker's § 1983 claims fail, his claim for attorney's fees under 42 U.S.C. § 1985 is denied as well.

[8]     Because I find the suit must be dismissed for the above-stated reasons, it is unnecessary to evaluate whether Walker has alleged sufficient facts to state a claim for supervisory liability or whether Daines and Sauders are entitled to qualified immunity.

CONCLUSION

For the reasons stated above defendants' motion to dismiss is granted.

So ordered.


John Gleeson, U.S.D.J.

Dated: July 21, 2009
Brooklyn, New York